# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00465-SCT

*JOE W. SMITH, JR.*

*v.*

*NATALIE CASH MALOUF, ALEX J. MALOUF, JR. AND PATRICIA MALOUF*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/14/2000 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RONALD HENRY PIERCE |
| ATTORNEYS FOR APPELLEES: | LUTHER T. MUNFORD |
| | STACEY P. STRACENER |
| | F. EWIN HENSON, III |
| | STEVEN COOKSTON |
| | RICHARD A. OAKES |
| | JAMES W. BURGOON, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 8/22/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/12/2002 |

**BEFORE McRAE, P.J., DIAZ AND CARLSON, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. In August 1991, Joe W. Smith, Jr. (Joey) and Natalie Cash Malouf (Natalie) were in a dating relationship, and Natalie became pregnant. Against Joey's wishes, Natalie decided to give the child up for adoption. Natalie then moved away, allegedly to hide from Joey while she was pregnant. Three months before the child was born, on January 14, 1992, Joey initiated legal proceedings against Natalie in the Leflore County Chancery Court seeking a declaration of paternity, order for custody of the child and injunctive relief to stop adoption proceedings within and outside Mississippi. On March 12, 1992, Joey also filed for a temporary restraining order to enjoin the commencement of adoption proceedings. On March 27,

1992, the chancellor issued a permanent injunction in the form of a final judgment which enjoined Natalie and "all who might assist her" from proceeding with an adoption.

¶2. On April 21, 1992, the child was born in Marietta, Georgia, then taken to California. From there, the child was adopted by Canadian citizens. On June 16, 1992, Joey and his parents filed suit in the Circuit Court of Leflore County against Natalie and her parents, Alex J. Malouf, Jr. and Patricia Malouf, for intentional infliction of emotional distress, conspiring to prevent Joey from exercising his parental rights and conspiring to effect illegal adoption of a child born out of wedlock. In September 1992, the Maloufs filed a motion to dismiss the complaint under M.R.C.P. 12(b)(6), which was granted by the circuit court in October 1992. Joey appealed that decision to this Court in November 1992.

¶3. In December 1992, Joey and Natalie agreed to the entry of an order dismissing the chancery court action. In April 1996, Joey filed a federal RICO lawsuit in Georgia alleging that Georgia residents conspired with Natalie and her parents to deprive him of his parental rights. That lawsuit was dismissed in September 1996.

¶4. In September 1998, this Court reversed and remanded the circuit court suit. *See **Smith v. Malouf**,* 722 So.2d 490 (Miss. 1998) (***Smith I***). On remand, Joey filed a motion for leave to file an amended complaint to add additional defendants to the suit. In February 1999, the Maloufs again filed a motion for summary judgment. In May 1999, the circuit court denied Joey's motion to amend complaint. In February 2000, the circuit court again granted the Maloufs' motion for summary judgment, finding that the agreed order dismissing the chancery court action collaterally estopped the circuit court suit for damages. It is from this ruling Joey now appeals citing the following issues:

> **I. WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT UNDER THE THEORY OF COLLATERAL ESTOPPEL.**
>
> **II. WHETHER THE DISMISSAL OF JOEY'S RICO SUIT IN GEORGIA FEDERAL COURT AND THE FINAL ORDER IN CHANCERY COURT BAR HIS CLAIM FOR CIVIL CONSPIRACY UNDER THE DOCTRINE OF RES JUDICATA.**
>
> **III. WHETHER THE CIRCUIT COURT ERRED IN DENYING JOEY'S MOTION TO AMEND COMPLAINT.**

## STANDARD OF REVIEW

¶5. This Court uses a de novo standard of review in cases where summary judgment has been granted. ***Townsend v. Estate of Gilbert***, 616 So.2d 333, 335 (Miss. 1993). The evidence must be viewed in the light most favorable to the non-moving party who will be given the benefit of every reasonable doubt. ***Id.***

## DISCUSSION

### I. WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT UNDER THE THEORY OF COLLATERAL ESTOPPEL.

¶6. The circuit court found that the agreed order entered in chancery court in 1992 barred Joey's civil conspiracy suit in circuit court under the doctrine of collateral estoppel. The agreed order essentially stated that Joey and Natalie agreed that (1) Joey is the biological father of the child; (2) all orders entered by the

chancery court prior to August 28, 1992, are void ab initio because process on Natalie was not proper and the chancery court did not have personal jurisdiction; (3) neither party nor their attorneys had engaged in any misconduct and any motions suggesting misconduct were dismissed with prejudice; and (4) Joey's petition was dismissed with prejudice.

¶7. Collateral estoppel precludes parties from re-litigating specific issues which have been actually litigated and are essential to the judgment in a former action. Also, collateral estoppel, unlike the broader doctrine of res judicata, applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated. *State ex rel. Moore v. Molpus*, 578 So.2d 624, 640 (Miss.1991).

¶8. In *Mississippi Employment Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist*., 437 So.2d 388, 397 (Miss.1983), this Court stated

> The doctrine of collateral estoppel must never be seen as anything other than an unusual exception to the general rule that all fact questions should be litigated fully in each case," and "[w]here there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied."

¶9. Joey argues that collateral estoppel does not apply when one has sought injunctive relief in chancery court then seeks damages in a court of law. He cites two cases in support of this argument, *Southern Land & Resources Co. v. Dobbs*, 467 So.2d 652 (Miss. 1985) and *Bush v. City of Laurel*, 234 Miss. 93,105 So.2d 562 (1958). These cases are not precisely on point because the underlying action in chancery court was won by the plaintiffs in *Bush* and *Dobbs.* Here, Joey did not "win" in chancery court; he consented to an agreed order which dismissed his petition.

¶10. Joey also argues that the agreed order cannot be given collateral estoppel effect because the case was not litigated on the merits. To the contrary, a "consent judgment acquires the incidents of, and will be given the same force and effect as, judgments rendered after litigation. It is binding and conclusive, operating as res judicata and an estoppel to the same extent as judgments after contest." *Guthrie v. Guthrie*, 233 Miss. 550, 556-57,102 So.2d 381, 383 (1958). Therefore, the provisions of the agreed order cannot be litigated in the circuit court action under the doctrine of collateral estoppel.

¶11. Our decision in *Smith I*, however, reveals that Joey's civil conspiracy claim is not solely based on the chancery court injunction. We found, in *Smith I*, that Joey's claim is based on the defendants' violation of the injunction *and* their conspiracy to "deprive Joey of his lawful rights as the natural parent of the child. *Smith I*, 772 So.2d at 498. We further found that "conduct may be at once tortious and violative of a court order."*Id*. Absent any outstanding custody order, Joey had the legal right to notice of any adoption and a right to veto the adoption unless he was found to be unfit.*Id*. at 498. As previously stated, these rights do not arise out of an injunction, but are based on the fact that natural parents have the "natural right to the nurture, care and custody of their children . . . .This is a rule of all nature as well as a rule for all man." *Simpson v. Rast*, 253 So.2d 233, 236 (Miss. 1972).

¶12. The tortious conduct which provides the basis for Joey's circuit court claims took place before December 7, 1992, the date the agreed order was entered. In the order, Joey effectively agreed that Natalie and those in privity with her committed no misconduct during the time frame when the baby was born and given up for adoption. Therefore, there is no factual premise for Joey's claims for civil conspiracy or emotional distress, and the circuit court properly granted summary judgment.

¶13. Finally, Joey argues that the final order can only be given collateral estoppel effect as to Natalie, not her parents or any other defendants. This raises the issue of privity. Strict identity of parties is not necessary for either res judicata or collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action. *McIntosh v. Johnson*, 649 So.2d 190, 193-94 (Miss.1995), *overruled on other grounds by [Norman v. Bucklew](#)*, 684 So.2d 1246 (Miss.1996); *Johnson v. Howell*, 592 So.2d 998, 1002 (Miss.1991); *Walton v. Bourgeois*, 512 So.2d 698, 701 (Miss.1987).

¶14. We find that the other defendants in this action are in privity with Natalie, especially in light of the final order stating that it applies to Natalie "and all who acted in concert with her." Therefore, the doctrine of collateral estoppel operates to bar re-litigation of those issues listed in the agreed order as to all defendants in this action.

### II. WHETHER THE DISMISSAL OF JOEY'S RICO SUIT IN GEORGIA FEDERAL COURT AND THE FINAL ORDER IN CHANCERY COURT BAR HIS CLAIM FOR CIVIL CONSPIRACY UNDER THE DOCTRINE OF RES JUDICATA.

¶15. The summary judgment from which Joey now appeals makes no mention of the Georgia RICO action, nor does it rely on the doctrine of res judicata in reference to the agreed order. Accordingly, we will now only cursorily discuss the Georgia RICO action.

¶16. The RICO action alleged a conspiracy between Natalie, her parents, and Georgia citizens to deprive Joey of his parental rights. The action was dismissed due to the running of the applicable statutes of limitations and lack of personal jurisdiction. Therefore, it was not "actually litigated" and cannot act as a bar to Joey's current suit under the doctrine of res judicata or collateral estoppel. [M.R.C.P. 41(b)](#); *Patton v. Mack Trucks, Inc*., 556 So. 2d 679, 680 (Miss. 1989). As such, the Georgia RICO action has no effect on Joey's present lawsuit in circuit court.

### III. WHETHER THE CIRCUIT COURT ERRED IN DENYING JOEY'S MOTION TO AMEND COMPLAINT.

¶17. Joey filed a motion to amend complaint, seeking to add The Malouf Furniture Co., The John Richards Collection, Burgoon and Oakes, James W. Burgoon, Richard A. Oakes, Patrick M. Malouf, and Thomas J. Carr as defendants and to allow the assertion of claims by Joe W. Smith, III, the minor son of Joey, acting by and through his next friend and guardian, Joey.

¶18. We find that this issue is moot in light of our decision to affirm the circuit court's dismissal of Joey's claims.

### CONCLUSION

¶19. The circuit court was correct in finding that Joey's claims are barred under the doctrine of collateral estoppel, and its judgment is affirmed.

¶20. **AFFIRMED**.

**SMITH, P.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

**PITTMAN, C.J., NOT PARTICIPATING.**