MAXWELL, JUSTICE, FOR THE COURT:
 

 ¶ 1. The trial court granted summary judgment in favor of George C. McKee and Brownsville Station, LLC, dismissing Monty Y. Brown's claims against them. Brown appeals, arguing the judge wrongly
 granted summary judgment without first allowing discovery. We disagree. Had summary judgment been granted on the merits-or lack thereof-of Brown's case, we would agree Brown should have been afforded an opportunity to conduct discovery under Mississippi Rule of Civil Procedure 56(f). But the judge did not grant summary judgment on the merits. He granted it based on the clear running of the statute of limitations. And, as the trial judge rightly found, none of Brown's discovery requests were aimed at establishing his claims were timely. Instead, they were zeroed in on proving his untimely claims.
 

 ¶ 2. Therefore, the trial judge did not abuse his discretion by denying Brown's Rule 56(f) motion for a continuance. We affirm the judgment dismissing Brown's untimely claims.
 

 Background Facts and Procedural History
 

 I. Brown's Divestment of Brownsville Station
 

 ¶ 3. Brown and McKee are former business partners. At one time they each owned a fifty-percent interest in Brownsville Station, which owned and operated an apartment complex in Starkville, Mississippi. But beginning in 2003, Brown began selling his interest to McKee. From July 2003 to January 2006, through a series of four agreements, Brown transferred all his interest units to McKee in exchange for $150,000 and title to the company tractor.
 
 [1]
 
 As part of the final agreement, both parties agreed to a full and final release of any and all claims against each other.
 

 II. Brown's Complaint Against McKee and Brownsville Station
 

 ¶ 4. For six years, Brown had no dealings with McKee or Brownsville Station. Then, in September 2012, Brown received notice from the Secretary of State that McKee had filed articles of reinstatement for Brownsville Station and its subsidiary, BrownE, LLC. According to Brown, the September 2012 notice prompted him to tell his boss about his former business relationship with McKee. And his boss, who was also an attorney, suggested McKee had engaged in wrongdoing.
 

 ¶ 5. So on April 13, 2013-almost ten years after the first transfer and seven years after the final transfer-Brown sued McKee and Brownsville Station in the Circuit Court of Oktibbeha County. Brown's complaint alleged that McKee had been Brown's personal attorney before they became business partners. Brown is a licensed general contractor, who had built several apartment buildings before going into business with McKee. Based on Brown's experience, McKee proposed that he and Brown enter a joint venture to build and operate an upscale apartment complex in Starkville. Brown would be responsible for the construction side, and McKee would handle the legal and financial
 aspects.
 
 [2]
 

 ¶ 6. To carry out this venture, McKee formed a limited liability company, BrownE, which McKee and Brown owned and controlled fifty/fifty. When the initial phase of the apartment complex was almost complete, however, the City of Starkville adopted an ordinance prohibiting development of new, unplatted apartments. According to Brown, this ordinance "had the effect of stopping further growth" of Brown and McKee's project. It also was the impetus for McKee's plot to get rid of Brown, whose construction services were no longer needed.
 

 ¶ 7. Brown's complaint alleged that McKee formed Brownsville Station, which became the sole owner of BrownE. Though Brown owned a fifty-percent interest in Brownsville Station, he asserted McKee formed the new LLC "solely to provide a vehicle to take secret or uniformed [sic] advantage of [Brown] by enabling [McKee], among other things, to change provisions of Brownsville LLC's Operating Agreement without [Brown's] informed consent." Brown further alleged that, during the 2003-2006 transactions, McKee hid important financial information and documentation about Brownsville Station and its true value, violating the fiduciary duties McKee owed as both Brown's attorney and fellow LLC member. Brown claimed McKee's action led to Brown's financial detriment. Brown had trusted McKee to provide all relevant information about the company. Instead, McKee fraudulently induced Brown to sell his interests below market value.
 

 ¶ 8. Brown's eight-count complaint
 
 [3]
 
 sought a constructive trust over fifty percent of Brownsville Station and the disgorgement of any fees and revenue Brown would have received had he remained a fifty-percent owner.
 

 III. McKee's and Brownsville Station's Response
 

 ¶ 9. On July 15, 2013, through separate responses, both defendants denied the allegations in Brown's complaint. Both also moved to transfer the complaint to chancery court and to dismiss the action based on the statute of limitations. On April 24, 2014, while the motions to transfer and dismiss were still pending, the defendants filed a joint motion for summary judgment, asserting the same statute-of-limitations argument. They also pointed to the full and final release from the January 2006 final agreement, as well as the testimony of attorney Dolton McAlpin.
 

 ¶ 10. At this point, the only discovery not opposed by the defendants was Brown's deposition of McAlpin.
 
 [4]
 
 According to McAlpin's sworn affidavit and deposition, Brown had sought out and received McAlpin's independent legal advice about the January 2006 final agreement, which Brown signed and notarized in McAlpin's office. In McAlpin's view, McKee had done nothing to improperly influence the advice McAlpin gave. Nor did McKee ask McAlpin to conceal any information. According to McAlpin, there had been no reason to
 believe the circumstances surrounding the transfer were anything but fully discoverable by Brown.
 

 IV. Brown's Rule 56(f) Motion to Postpone
 

 ¶ 11. Brown opposed the motion for summary judgment with his own motion. He requested the summary-judgment ruling be postponed under Mississippi Rule of Civil Procedure 56(f). According to Brown, this rule entitled him to the discovery he had requested through pending motions to compel before the trial court ruled on the summary-judgment motion. Specifically, Brown wanted to see documents related to the value of Brownsville Station at the time Brown transferred his interest and to depose McKee on the circumstances surrounding the transfer.
 
 [5]
 

 ¶ 12. Brown also argued the statute of limitations had been tolled for three reasons: (1) because McKee had acted as Brown's attorney, it was reasonable for Brown not to discover McKee's wrongful actions; (2) McKee had fraudulently concealed Brown's cause of action; and (3) McKee was equitably estopped from asserting the statute of limitations as a defense.
 

 V. Trial Court's Judgment
 

 ¶ 13. After denying the pending motion to transfer, the trial judge denied Brown's motion to postpone and granted the defendants' motion for summary judgment. The judge agreed with McKee and Brownsville Station that Brown had filed his action at least four years too late. Brown's claims accrued, and thus the three-year statute of limitations began to run, by January 2006-the time of his alleged injury. And none of Brown's tolling arguments applied. Specifically, the trial judge found the "discovery rule" did not apply, because Brown's alleged injury
 
 was not
 
 latent. Instead, the true value of the company was discoverable at the time of the transfer. And Mississippi Code Section 15-1-67's fraudulent-concealment provision was inapplicable because Brown could not demonstrate McKee engaged in some affirmative act to prevent Brown from discovering his claims. Finally, the extraordinary remedy of equitable estoppel did not apply because Brown could point to no action or misrepresentation by McKee to justify tolling the statute of limitations.
 

 ¶ 14. The trial judge also found Brown had failed to demonstrate additional discovery was warranted, because the discovery Brown sought "would not answer the necessary predicate question of when Brown's claim accrued, whether he had a latent injury, and when he knew or should have known of his claims." Instead, the information Brown sought "would only advance a potential finding regarding the extent of Brown's alleged damages." And
 "discovery related to the degree of harm ... is of no consequence to the defendants' motion." Moreover, the trial court noted Brown should have in
 
 his
 
 possession the information necessary to prove when he reasonably discovered his injury and thus did not need discovery from McKee. Because summary judgment had been granted and Brown's Rule 56(f) motion had been denied, the trial court dismissed Brown's pending motions to compel as moot.
 

 ¶ 15. After the trial court entered its final judgment, Brown appealed.
 
 [6]
 

 Discussion
 

 ¶ 16. " Rule 56(b) permits a defendant to move for summary judgment 'at any time.' "
 
 Roberts v. Boots Smith Oilfield Servs., LLC
 
 ,
 
 200 So.3d 1022
 
 , 1026 (Miss. 2016) (quoting Miss. R. Civ. P. 56(b) ). Under Rule 56(c), "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Relevant to this case, summary judgment shall be granted if no genuine issue of material fact exists concerning the question of the running of the statute of limitations.
 
 Smith v. Sanders
 
 ,
 
 485 So.2d 1051
 
 , 1053 (Miss. 1986). And we review the grant of summary judgment de novo.
 
 Prescott v. Leaf River Forest Prods., Inc.
 
 ,
 
 740 So.2d 301
 
 , 308 (Miss. 1999).
 

 ¶ 17. "But if a summary-judgment motion is filed before discovery is complete, the trial court may postpone ruling on the motion to permit depositions to be taken and other discovery to be had."
 
 Roberts
 
 ,
 
 200 So.3d 1022
 
 , 1026 (citing Miss. R. Civ. P. 56(f) ;
 
 Owens v. Thomae
 
 ,
 
 759 So.2d 1117
 
 , 1120 (Miss. 1999) ). We review the denial of a Rule 56(f) motion to continue for abuse of discretion.
 
 Prescott
 
 ,
 
 740 So.2d at 307
 
 .
 

 ¶ 18. With this standard in mind, after de novo review, we agree there are no genuine issues of material fact concerning the running of the statute of limitations. Brown's claims are indisputably time-barred. Moreover, the trial court did not abuse its discretion when it denied Brown's motion for postponement to conduct discovery, as none of Brown's discovery requests were aimed at proving his untimely claims were not barred.
 

 I. Brown's claims accrued by January 2006.
 

 ¶ 19. Both sides agree Section 15-1-49's three-year statute of limitation applies to Brown's claims.
 
 Miss. Code Ann. § 15-1-49
 
 (1) (Rev. 2012). Brown sued McKee and the LLC they jointly owned, Brownsville Station, for actions McKee allegedly took from 1997 to 2006, which culminated in Brown selling the remainder of his interest in the apartment complex to McKee in January 2006. So Brown's cause of action against McKee accrued in January 2006, when "it [came] into existence as an enforceable claim."
 
 Anderson v. LaVere
 
 ,
 
 136 So.3d 404
 
 , 411 (Miss. 2014). Under Section 15-1-49(1), Brown had to file suit within three years from the completion of the sale "and not after." But Brown did not file his complaint until April 2013-years after Section 15-1-49's time bar. Thus, clearly, McKee and Brownsville Station are entitled to summary judgment.
 

 ¶ 20. Brown seeks refuge in Section 15-1-49(2)'s tolling provision. But this provision
 applies only to actions "involv[ing] latent injury or disease."
 
 Miss. Code Ann. § 15-1-49
 
 (2) (Rev. 2012). Here, Brown's alleged injury-underselling his interest in the company-was not latent. The true value of the apartment complex at the time of sale was reasonably discoverable-especially to someone like Brown, who according to his own pleading had experience building apartments in Starkville. That Brown
 
 chose
 
 to trust McKee and not question the numbers, documents, or McKee's motives does not make this information "inherently undiscoverable."
 
 [7]
 

 ¶ 21. Moreover, Section 15-1-49(2) delays a claim from accruing only until "the plaintiff has discovered,
 
 or by reasonable diligence
 
 should have discovered, the injury." (Emphasis added.) And, here, reasonable diligence should have led to the discovery of Brown's alleged injuries well before April 2010-three years before he filed his complaint. But, by his own admission, Brown did not exercise reasonable diligence. Instead, he did nothing for six years.
 

 ¶ 22. Sending this issue back for discovery under Rule 56(f) will not lead to a different result. Why would Brown need discovery from McKee to show when
 
 he
 
 (Brown) reasonably learned of his injury? What efforts Brown took to discover his claims is information within Brown's knowledge-and not in McKee's and Brownsville Station's exclusive possession.
 
 See
 

 Prescott
 
 ,
 
 740 So.2d at 308
 
 (requiring "the party invoking Rule 56(f)... [to] show what steps have been taken to obtain access to the information allegedly within the exclusive possession of the other party"). Because Brown produced no such information but instead asserted the opposite-that he did nothing for six years-the trial judge correctly found there was no genuine issue of material fact that Brown's claims accrued in January 2006, when Brown signed the final agreement.
 

 II. Discovery would not enable Brown to establish a fraudulent-concealment claim.
 

 ¶ 23. Importantly,
 
 all
 
 of Brown's claims accrued by January 2006-including those based on McKee's alleged fraud. "A fraud claim 'accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud.' "
 
 Sanderson Farms Inc. v. Ballard
 
 ,
 
 917 So.2d 783
 
 , 789 (Miss. 2005) (quoting
 
 Dunn v. Dent
 
 ,
 
 169 Miss. 574
 
 ,
 
 153 So. 798
 
 (1934) ). And, here, the sale McKee's fraud allegedly induced was completed by January 2006. So this is when McKee's fraud was consummated and the three-year clock started to run.
 

 ¶ 24. Brown asserts he is saved from this time-bar because of "fraudulent concealment." But fraudulent concealment is a statutory tolling provision
 
 [8]
 
 that requires "the party purporting that there was fraudulent concealment" to show two things-"(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) and due diligence was performed on their part to discover it."
 
 Channel v. Loyacono
 
 ,
 
 954 So.2d 415
 
 , 423 (Miss. 2007) (quoting
 
 Stephens v. Equitable Life Assurance Soc'y of U.S
 
 .
 

 ,
 
 850 So.2d 78
 
 , 84 (Miss. 2003) ). And Brown has shown neither.
 

 ¶ 25. Brown has not alleged-let alone tried to prove-McKee took any affirmative act after Brown cashed out in January 2006 to prevent Brown from discovering his claim. Instead, Brown merely asserts that McKee had control over all the documents. But Brown "cannot satisfy the 'affirmative act' requirement with mere allegations that the other party had complete control of the information."
 
 Trustmark Nat'l Bank v. Meador
 
 ,
 
 81 So.3d 1112
 
 , 1119 (Miss. 2012).
 

 ¶ 26. Citing
 
 Van Zandt v. Van Zandt
 
 ,
 
 227 Miss. 528
 
 ,
 
 86 So.2d 466
 
 (1956), the dissent suggests that the affirmative-act requirement may be satisfied by McKee's mere silence, because, as a fellow LLC member and manager, McKee owed Brown fiduciary duties. But here we do not have the same facts. The type of silence that equated to fraudulent concealment in
 
 Van Zandt
 
 -the concealed sale of cotenants' land and the failure to turn over the pro rata share of the proceeds-is not present here. Brown's sale to McKee was by no means concealed from Brown, who was a party to the sale and accepted his agreed-upon proceeds for the interest transfer.
 

 ¶ 27. Moreover, this Court has held that "an act cannot be both an act of fraud in the inducement and an act of fraudulent concealment."
 
 Whitaker v. Limeco Corp.
 
 ,
 
 32 So.3d 429
 
 , 438 (Miss. 2010) (holding that "showing false financial records could not serve to have both fraudulently induced the Plaintiffs and fraudulently concealed from the Plaintiffs the underlying fraud claim").
 
 [9]
 
 And the act of omission both Brown and the dissent assert was fraudulent concealment is McKee's alleged act of fraud in the inducement of Brown to sell his interest below its value.
 

 ¶ 28. This is the fatal flaw with Brown's discovery request. By his own admission, Brown is not seeking discovery to prove what happened
 
 after
 
 he transferred his interest in January 2006. He is seeking discovery on what happened
 
 before
 
 -as proof he was fraudulently induced into the transfer. As the trial judge rightly noted, "discovery of this type ... is of no consequence" to the issue of whether Brown's claim was fraudulently concealed.
 

 ¶ 29. A party asserting Rule 56(f) as a means to postpone a summary-judgment ruling "must present specific facts why he cannot oppose the motion and must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.' "
 
 Prescott
 
 ,
 
 740 So.2d at 308
 
 (citations omitted). Brown cannot do this, because his discovery requests are not aimed at showing a genuine issue of fact on whether McKee, through
 
 subsequent
 
 dealings with Brown, fraudulently concealed Brown's cause of action.
 
 Whitaker
 
 ,
 
 32 So.3d at 438
 
 .
 

 ¶ 30. But even assuming, as the dissent asserts, McKee's mere silence as an LLC member is sufficient to establish an affirmative act of concealment, Brown still has to show due diligence.
 
 Channel
 
 ,
 
 954 So.2d at 423
 
 . And certainly discovery would not aid Brown in establishing this second requirement
 of fraudulent concealment. Again, Brown does not need discovery from McKee to show what efforts he (Brown) took to discover McKee's alleged fraud.
 
 See
 

 Prescott
 
 ,
 
 740 So.2d at 308
 
 (noting Rule 56(f) is especially designed to protect a party who "claims the necessary information rests within the possession of the party seeking summary judgment"). By his own uncontradicted assertion, Brown did nothing for six years, until a 2012 letter from the Secretary of State's office prompted him to talk to his boss, an attorney, about what happened between 2003 and 2006.
 

 ¶ 31. Brown would have borne the burden at trial to prove that fraudulent concealment delayed his claim from accruing.
 
 See
 

 Channel
 
 ,
 
 954 So.2d at 423
 
 . So at the summaryjudgment stage, Brown bore the burden to produce evidence establishing a triable claim for fraudulent concealment.
 
 See
 

 Karpinsky v. Am. Nat'l Ins. Co
 
 .
 

 ,
 
 109 So.3d 84
 
 , 88-89 (Miss. 2013). Because none of Brown's discovery requests would help him meet this burden of production, the trial court did not abuse its discretion when it denied Brown's Rule 56(f) motion for postponement and dismissed Brown's pending motions to compel as moot.
 

 III. Nor would discovery enable Brown to prove equitable estoppel.
 

 ¶ 32. Finally, Brown argues for equitable estoppel. But Brown's equitable-estoppel claim does not save him from summary judgment either.
 

 ¶ 33. "Equitable estoppel is generally defined as 'the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed.' "
 
 Kimball Glassco Residential Ctr., Inc. v. Shanks
 
 ,
 
 64 So.3d 941
 
 , 947 (Miss. 2011) (quoting
 
 Simmons Housing, Inc. v. Shelton
 
 ,
 
 36 So.3d 1283
 
 , 1287 (Miss. 2010) ). It is "an extraordinary remedy ... that should be applied with caution."
 

 Id.
 

 And to apply it to a statute of limitations, "[i]nequitable or fraudulent conduct must be established[.]"
 

 Id.
 

 (quoting
 
 Trosclair v. Miss. Dep't of Transp
 
 .
 

 ,
 
 757 So.2d 178
 
 , 181 (Miss. 2000) ).
 

 ¶ 34. As already discussed, Brown has pointed to no fraudulent conduct or misrepresentation by McKee that would justify applying the extraordinary remedy of preventing McKee and Brownsville from asserting the running of the statute of limitations. So why would he need discovery from McKee to prove what McKee said or did to induce Brown not to pursue a cause of action-especially since Brown's own uncontradicted assertion is that he had zero conversation or interaction with McKee following the January 2006 Final Agreement? Thus, as with Brown's discovery-rule and fraudulent-concealment claims, Brown cannot specifically demonstrate how a Rule 56(f) postponement would enable him by discovery to establish his equitable-estoppel claim.
 
 See
 

 Prescott
 
 ,
 
 740 So.2d at 308
 
 .
 

 Conclusion
 

 ¶ 35. Given the nature of Brown's allegations, it is tempting to allow him to pursue his untimely claims through discovery. But "the fact that a barred claim is a just one or has the sanction of a moral obligation does not exempt it from the limitation period."
 
 Smith v. Sneed
 
 ,
 
 638 So.2d 1252
 
 , 1263 (Miss. 1994). Mississippi's limitations statutes "apply with full force to all claims and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a given case."
 

 Id.
 

 Instead, we must abide by the "legislative
 prerogative" to establish time boundaries.
 

 ¶ 36. Here, defendants McKee and Brownsville Station met their burden to prove all of Brown's claims fell outside the legislatively established time boundary. And Brown failed to specifically demonstrate how postponing the grant of summary judgment would enable him through discovery to rebut this undisputed fact. Therefore, we affirm the trial judge's grant of summary judgment in favor of McKee and Brownsville Station based on Section 15-1-49(1)'s time bar.
 

 ¶ 37.
 
 AFFIRMED.
 

 WALLER, C.J., RANDOLPH, P.J., COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND ISHEE, JJ.
 

 The first transfer occurred in July 2003. Brown executed a stock sale transferring to McKee three of his one hundred interest units in Brownsville Station in exchange for $4,500. Brown also granted McKee an option to purchase Brown's remaining ninety-seven interest units for $145,000 and title to the company tractor. A month later, in August 2003, the two entered into a second agreement. Brown sold McKee additional interest units in exchange for $90,421.80 and title to the tractor, as well as other company property. Following the second agreement, Brown became a 17% interest holder and McKee an 83% interest holder of Brownsville Station.
 

 A third agreement was executed in December 2003, in which Brown granted McKee a conditional option to purchase Brown's 17% interest for $55,078.20. The pair entered their fourth and final agreement in January 2006. Brown transferred his remaining interest in the LLC to McKee for $55,078.20.
 

 According to Brown's complaint, McKee had orally promised "to take care of" Brown as far as legal matters went.
 

 Brown's complaint lists his causes of action as "undue influence," "breach of fiduciary agreement by attorney," "breach of fiduciary duty as manager," "breach of fiduciary duty: trust and confidence," "negligent misrepresentation," "fraudulent misrepresentation," "breach of implied covenant of good faith and fair dealing," "fraud: deceit and concealment," and "accounting: constructive trust."
 

 McKee and Brownsville moved to quash all other discovery requests as intrusive and needless, given that, as a matter of law, Brown's claims were untimely.
 

 Brown claimed he needed the following documents related to Brownsville Station's value at the time of the transfer: (1) loan documents for Brownsville Station; (2) bank account statements for Brownsville Station; (3) financial statements for Brownsville Station; (4) appraisals of the property of Brownsville Station; and (5) operating agreements for BrownE and Brownsville Station.
 

 He also wanted to depose McKee on the following issues: (1) McKee's representation of Brown; (2) the operating agreement for BrownE and Brownsville Station; (3) the decision to form Brownsville Station; (4) the July 6, 2003 Stock Sale and Option Contract; (5) the August 7, 2003 Share Sale and Tractor Contract; (6) the December 2003 contract between Brown and McKee; (7) January 2006 sale and release; (8) the hiring of Dolton McAlpin; (9) why McKee withheld important financial documents for Brownsville Station from Brown prior to Brown selling his shares; (10) what legal representation, if any, McKee believed Brown had at the different sales of his shares; and (11) the reasons for each purchase of Brown's shares.
 

 The order granting summary judgment and denying discovery did not dispose of the defendant's counterclaims. But pursuant to Mississippi Rule of Civil Procedure 54(b), the trial court certified the judgment as final, paving the way for Brown to file an appeal.
 

 Donald v. Amoco Prod. Co.
 
 ,
 
 735 So.2d 161
 
 , 168 (Miss. 1999).
 

 Under Section 15-1-67, "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered."
 
 Miss. Code Ann. § 15-1-67
 
 (Rev. 2012).
 

 In
 
 Whitaker
 
 , it was the parties' "subsequent dealing
 
 after
 
 the ... fraudulent inducement" that entitled the plaintiffs to move forward with their fraudulent-concealment claim.
 

 Id.
 

 (emphasis added). In so holding, this Court distinguished
 
 Whitaker
 
 from the untimely fraud claim in
 
 Dunn v. Dent
 
 ,
 
 169 Miss. 574
 
 ,
 
 153 So. 798
 
 (1934). "Unlike
 
 Dunn
 
 , the Plaintiffs' complaint in today's case alleged
 
 subsequent dealings and communication between the parties
 
 , such that a jury determination as to whether the Plaintiffs used due diligence in discovering their fraud claim is necessary."
 
 Whitaker
 
 ,
 
 32 So.3d at 437-38
 
 (emphasis added).